No. 25-4833

In the

# United States Court of Appeals
## For the Ninth Circuit

TERRY MYERS AND DAWN OUTLAW,

*Plaintiffs-Appellees,*

v.

SAZERAC COMPANY, INC.,

*Defendant-Appellant.*

On Appeal from the U.S. District Court for the Northern District of California
The Honorable Edward M. Chen, No. 3:23-cv-00522-EMC

**BRIEF OF *AMICI CURIAE* THE NATIONAL ASSOCIATION OF MANUFACTURERS AND THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF DEFENDANT-APPELLANT**

Erica Klenicki
Caroline McAuliffe
National Association of Manufacturers
733 10th Street, N.W.
Suite 700
Washington, D.C. 20001
*Counsel for the National Association of Manufacturers*

Matthew A. Fitzgerald
Morgan V. Maloney
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
mfitzgerald@mcguirewoods.com
mmaloney@mcguirewoods.com
*Counsel for Amici Curiae*

*(additional counsel listed on inside cover)*

Jonathan D. Urick
Audrey Dos Santos
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for the Chamber of Commerce of the United States of America*

March 30, 2026

## CORPORATE DISCLOSURE STATEMENT

The National Association of Manufacturers ("NAM") states that it is a non-profit, tax-exempt organization incorporated in the State of New York. NAM has no parent corporation, and no publicly held company has 10% or greater ownership in NAM.

The Chamber of Commerce of the United States of America ("Chamber") states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF *AMICI CURIAE* .......... 1

INTRODUCTION .......... 2

ARGUMENT .......... 3

I. Plaintiffs' proposed conjoint analysis is inadequate to determine price premium and thus constitute a classwide damages model. .......... 4

A. Because conjoint analysis only considers demand-side factors, conjoint analysis alone cannot support a price premium theory of damages .......... 7

B. Plaintiffs' conjoint analysis fails to account for supply-side factors and so does not suffice for a reliable classwide damages model. .......... 12

II. The district court's opinion exemplifies the flaws in deferring a full Rule 702 analysis until after class certification. .......... 15

A. Deferring Rule 702 inquiries until after class certification violates Supreme Court precedent and the Federal Rules. .......... 16

B. In practice, deferring Rule 702 inquiries has wasted judicial and party resources. .......... 18

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
37 F.4th 890 (3d Cir. 2022) ........................................ 18

*Am. Honda Motor Co. v. Allen*,
600 F.3d 813 (7th Cir. 2010) ........................................ 16

*Anderson v. Ford Motor Co.*,
74 Cal. App. 5th 946 (2022) ........................................ 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................ 18

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ........................................ 19

*Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*,
226 Cal. App. 4th 1260 (2014) ........................................ 8

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) ........................................ 8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........................................ 3, 6, 14, 15, 18

*Earl v. Boeing Co.*,
53 F.4th 897 (5th Cir. 2022) ........................................ 11

*In re Apple iPhone Antitrust Litig.*,
2025 WL 3124160 (N.D. Cal. Oct. 27, 2025) ........................................ 19

*In re Apple iPhone Antitrust Litig.*,
No. 4:11-cv-6714 (N.D. Cal.) ........................................ 19

*In re Blood Reagents Antitrust Litig.*,
783 F.3d 183 (3d Cir. 2015) ........................................ 16

*In re Gen. Motors LLC Ignition Switch Litig.*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019) ........................................ 12

*In re Nissan N. Am., Inc. Litig.*,
122 F.4th 239 (6th Cir. 2024) ....................................................................16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ..................................................................... 6

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014) ..................................................................16

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024)..........................................................3, 5, 6, 14, 16

*Mier v. CVS Health*,
2023 WL 4837851 (9th Cir. July 28, 2023)...................................................11

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025)................................................................... 7, 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .................................................. 5, 14, 18

*Prantil v. Arkema Inc.*,
986 F.3d 570 (5th Cir. 2021) .....................................................................16

*Sali v. Corona Reg'l Med. Ctr.*,
907 F.3d 1185 (9th Cir. 2018)....................................................................16

*Sher v. Raytheon Co.*,
419 F. App'x 887 (11th Cir. 2011) ..............................................................16

*Szabo v. Bridgeport Machs., Inc.*,
249 F.3d 672 (7th Cir. 2001) ..................................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)........................................................................... 5, 14, 17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................5, 17

*Wallace v. Countrywide Home Loans Inc.*,
2013 WL 12642019 (C.D. Cal. Feb. 12, 2013) ............................................ 20

*Wallace v. Countrywide Home Loans Inc.*, No. 8:08-cv-01463 (C.D. Cal.) .......... 20

*Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .......... 20

*Werdebaugh v. Blue Diamond Growers*, No. 5:12-cv-02724 (N.D. Cal.) .......... 20

*Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623 (9th Cir. 2018) .......... 11

**Rules**

Fed. R. Civ. P. 23 .......... 5

Fed. R. Civ. P. 23(f), 1998 Amendment, committee notes .......... 18

Fed. R. Evid. 401 .......... 17

Fed. R. Evid. 403 .......... 17

Fed. R. Evid. 702 .......... *passim*

Fed. R. Evid. 702, 2000 Amendments, committee notes .......... 16

Fed. R. Evid. 702, 2023 Amendments, committee notes .......... 16

Fed. R. Evid. 1101 .......... 17

**Other Authorities**

Irena Asmundson, *Supply and Demand: Why Markets Tick*, F&D Magazine (June 17, 2010), https://tinyurl.com/4mm6ndyf .......... 11

Suneal Bedi & David Reibstein, *Damaged Damages: Errors in Patent and False Advertising Litigation*, 73 Ala. L. Rev. 385 (2021) .......... 3, 9, 10

Neil T. Bendle *et al.*, *Marketing Metrics*, ch. 4 (3d ed. 2016) .......... 9

Bernard Chao & Sydney Donovan, *Does Conjoint Analysis Reliably Value Patents?*, 58 Am. Bus. L.J. 225 (2021) .......... 9

## IDENTITY AND INTEREST OF *AMICI CURIAE*

The National Association of Manufacturers ("NAM") is the largest manufacturing association in the United States, representing small and large manufacturers in all fifty states and in every industrial sector. Manufacturing employs nearly 13 million people, contributes $2.9 trillion to the economy annually, has the largest economic impact of any major sector, and accounts for over half of all private-sector research and development in the nation, fostering the innovation that is vital for this economic ecosystem to thrive. The NAM is the voice of the manufacturing community and leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States.

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. The Chamber represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus* briefs in cases, like this one, that raise issues of concern to the nation's

business community.

*Amici*'s members are often targeted as defendants in class actions. *Amici* thus are able to offer the business community's unique perspective on the significant costs class-action litigation imposes on the economy and consumers when courts fail to rigorously apply the requirements of Federal Rule of Civil Procedure 23 and Federal Rule of Evidence 702.[1]

## INTRODUCTION

Alarm bells have long rung out against using conjoint analyses in false advertising litigation. This Court should heed the alarm. It should clarify that conjoint analysis alone cannot determine market value and warn lower courts against rubberstamping proposed conjoint analysis studies. This case demonstrates the pitfalls of failing to rigorously review such analyses in the class-action context.

Plaintiffs routinely offer flawed conjoint analyses to determine how much class members allegedly overpaid for a mislabeled product. But conjoint analysis alone is fundamentally incapable of doing what false advertising plaintiffs assert it does—it cannot calculate market value. Still, district courts have accepted these models and

[1] Counsel for all parties confirmed that they do not oppose the filing of this brief. No counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

certified classes based on them. In doing so, these courts—including the one below—fail in their duty to "conduct a rigorous analysis" of plaintiffs' damages model, *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), violating Federal Rule of Civil Procedure 23's requirements. This Court should stop this worrying trend and re-direct district courts to the proper uses and limitations of conjoint analysis.

In any event, this case is an example of why this Circuit's deferral of a full Federal Rule of Evidence 702 expert inquiry until after class certification is flawed in both principle and practice. The opinion below is but the latest example of district courts failing to rigorously interrogate proposed damages models in mislabeling cases. For this reason, too, this Court should reverse the district court's class certification.

## ARGUMENT

This Court has held that, "in the abstract," conjoint analysis may be "capable of measuring classwide damages." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). But such cases should be very rare. Conjoint analysis "is being consistently misused" in the courts in false advertising litigation. Suneal Bedi & David Reibstein, *Damaged Damages: Errors in Patent and False Advertising Litigation*, 73 Ala. L. Rev. 385, 386 (2021) (emphasis removed).

The district court allowed Plaintiffs to pursue a price premium theory of damages based solely on conjoint analysis. In doing so, it erred. Failing to account for supply-side and market conditions, conjoint analysis is fundamentally incapable of measuring the hypothetical market value of an allegedly properly labeled product.

In addition, this case further exemplifies the flaws in this Court's view that full Rule 702 inquiries should be postponed until after class certification. This Court has allowed plaintiffs to rely on expert reports that have not been proved admissible under Rule 702, forcing defendants like Sazerac to shoulder the burdens of class litigation on the strength of untested expert evidence. This Court should better align itself with its sister circuits that apply Rule 702 in full at class certification.

## I. Plaintiffs' proposed conjoint analysis is inadequate to determine price premium and thus constitute a classwide damages model.

Plaintiffs proposed, and the district court accepted, a conjoint analysis in support of their price premium damages theories. But conjoint analysis, even when done correctly, cannot alone determine the actual market value of an allegedly improperly labeled product. Thus, it cannot be used to determine how much class members purportedly overpaid for an allegedly mislabeled product, and how much they are accordingly entitled to in damages. Overlooking conjoint analysis's inherent limitations in false advertising cases, the district court erred in finding that Plaintiffs' proposed conjoint analysis is capable of calculating classwide damages.

Governed by Federal Rule of Civil Procedure 23, class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Rule 23 is more than a pleading standard. Plaintiffs bear "the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Lytle*, 114 F.4th at 1023.

First, plaintiffs must satisfy Rule 23(a)'s "four requirements—numerosity, commonality, typicality, and adequate representation." *Wal-Mart Stores*, 564 U.S. at 349. Second, they must satisfy Rule 23(b). Here, Plaintiffs seek certification of a Rule 23(b)(3) class, Mot. for Class Cert. at 3, ECF No. 56 (May 21, 2024), which requires them to prove predominance and superiority, Fed. R. Civ. P. 23(b)(3). "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc).

Rule 23(b)'s "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). To prove predominance, "a class action plaintiff must establish

that damages are *capable* of measurement on a classwide basis." *Lytle*, 114 F.4th at 1024 (marks omitted). As with the other Rule 23 requirements, district courts must conduct a "rigorous analysis" to determine whether the offered damages model is "consistent with [plaintiffs'] liability case." *Comcast*, 569 U.S. at 35. The Supreme Court has rejected the argument that "at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Id.* at 36. "Such a proposition," the Court held, "would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* "[I]t is now clear . . . that Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show predominance—the rule commands it." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013). At class certification, courts must determine that a damages model "is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Lytle*, 114 F.4th at 1019.

Without a classwide damages model, plaintiffs fail to demonstrate that common issues will predominate over individualized ones. As the D.C. Circuit succinctly summarized: "No damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d at 253.

Because Plaintiffs fail to put forward a classwide damages model, this class should never have been certified.

### A. Because conjoint analysis only considers demand-side factors, conjoint analysis alone cannot support a price premium theory of damages.

Because conjoint analysis fails to account for supply-side and other market factors, conjoint analysis cannot determine the market value of a product but-for an alleged mislabeling. As a result, conjoint analysis alone cannot support a price premium theory.

Like many California false advertising plaintiffs, Plaintiffs pursue a price premium theory of damages for all their claims. Opinion at 18–19, ECF No. 79 (Feb. 12, 2025); *see also Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 865 (9th Cir. 2025) (noting that a "price premium" theory "is the standard measure of damages under the [Consumer Legal Remedies Act ('CLRA')] and of restitution under the [False Advertising Law ('FAL')] and [Unfair Competition Law ('UCL')]."), *petition for cert. filed*, No. 25-874 (U.S. Jan. 16, 2026).[2] A price

---

[2] Due to the FAL and UCL's equitable nature, courts have discretion to determine damages under those two statutes. "However, that discretion is not unlimited" and "[t]he amount of restitution awarded under the False Advertising and Unfair Competition Laws and the CRLA must be supported by substantial evidence."

premium damages model seeks to determine how much class members overpaid for a mislabeled product. *Id.* To determine the price premium, courts subtract the market value—the price of the properly labeled product if "sold in an open market [and] if all of its defects and limitations were known at the time of sale"—from the amount the plaintiff paid for the mislabeled product. *Anderson v. Ford Motor Co.*, 74 Cal. App. 5th 946, 961 (2022); *see also Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*, 226 Cal. App. 4th 1260, 1274 (2014). The difference is, in theory, how much each class member overpaid for the product because of the mislabeling and thus how much damage each class member suffered.

Plaintiffs agree that their damages theory turns on the proper calculation of the market value of Fireball Malt. Ben-Akiva Decl. at 22 ¶ 50, ECF No. 56-1 (May 21, 2024) (proposing to calculate damages as "the difference between the actual price of the Fireball malt beverage and the price the seller would have charged if consumers were not deceived to believe they were buying a whiskey beverage with an ABV of 33%."). To determine the proper market value of Fireball Malt, Plaintiffs

---

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006), *as modified on denial of reh'g* (Jan. 31, 2006). Here, Plaintiffs only proceed on and presented evidence pertaining to an actual market value theory for the FAL and UCL claims, identical to their CLRA claims. *See* Opinion at 18–19.

propose to conduct a conjoint analysis. *See id*. at 5–6 ¶ 10.

But a conjoint analysis alone cannot determine market value here. Conjoint analysis (if done correctly) can, at most, determine the value consumers place on a product. *See, e.g.*, Bedi & Reibstein, 73 Ala. L. Rev. at 402 (conjoint analysis can determine "the value . . . that the respondent places on each of the features"); Neil T. Bendle *et al*., *Marketing Metrics*, ch. 4, at 146 (3d ed. 2016) ("Marketers use conjoint analysis to measure consumers' preference."). Developed for marketing research, conjoint analysis "attempts to quantify the value of a given feature by looking at the trade-offs consumers are willing to make." Bernard Chao & Sydney Donovan, *Does Conjoint Analysis Reliably Value Patents?*, 58 Am. Bus. L.J. 225, 232 (2021); *see also* Bedi & Reibstein, 73 Ala. L. Rev. at 388. In false advertising litigation, including in this case, experts often rely on so-called choice-based conjoint analysis. Bedi & Reibstein, 73 Ala. L. Rev. at 400; *see* Ben-Akiva Decl. at 5–6 ¶ 10. In these studies, survey respondents "choose between different variations of the same product." Chao & Donovan, 58 Am. Bus. L.J. at 233.

The following example illustrates how choice-based conjoint analysis works: "[A]ssume that a researcher wants to understand how consumers value various features of computers. In particular, a researcher wants to understand how much consumers are willing to pay for (1) a larger screen size, (2) more memory, and (3)

an Apple computer versus a Dell." Bedi & Reibstein, 73 Ala. L. Rev. at 400. Mixing and matching variations of these three product components, "a researcher will create product profiles to compete with each other." *Id.* at 401. For example, survey respondents could be asked to decide between buying a cheaper Apple computer with a larger screen but less memory or a more expensive Dell with a smaller screen but more memory. *Id.* Often, respondents are offered three to five products to choose between. *Id.* After running the surveys with multiple participants and profile sets, statisticians then perform a multinominal regression that, theoretically, allows them to "estimate[] the value (utility) that the respondent places on each of the features and their levels. The estimates from this regression are called 'part worths.'" *Id.* at 401–02. The smaller the part worth, the less value the survey respondents assign to that product feature. *Id.* at 402.

Accordingly, conjoint analysis at best measures the value consumers derive from product attributes. But it does not represent what manufacturers would sell the product for. Putting this in economic terms, conjoint analysis can determine demand, but alone it says nothing about supply.

Conjoint analysis therefore cannot determine market value in false advertising cases. The market value is determined based on where the supply and demand curves meet. Irena Asmundson, *Supply and Demand: Why Markets Tick*, F&D

Magazine (June 17, 2010), https://tinyurl.com/4mm6ndyf. Failing to account for supply, conjoint analysis can, at best, provide half of the equation.

In unpublished opinions, this Court has recognized the need for damages models to account for supply. *Mier v. CVS Health*, 2023 WL 4837851, at *1 (9th Cir. July 28, 2023) ("The district court reasonably concluded that [the plaintiff's] damages model does not adequately account for market supply and thus cannot measure class-wide damages based on market value."); *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624–25 (9th Cir. 2018) (noting that when plaintiffs use conjoint analysis, "[s]uch methods must . . . reflect supply-side considerations and marketplace realities that would affect product pricing").

Other courts have recognized the same. For example, the Fifth Circuit reversed a district court's class-certification order, rejecting plaintiffs' proffered conjoint analysis for failing to account for supply-side and real-world factors. *See Earl v. Boeing Co.*, 53 F.4th 897, 902–03 (5th Cir. 2022). Plaintiffs' analysis purported to show that they would have paid less for airline tickets had they known about an alleged mechanical defect, but failed to account for the reality that, had the purported defect been known, airlines would not have continued to sell tickets. *Id.* at 899, 902–03. The alleged concealment of the supposed defect thus did not injure plaintiffs.

In another example, the Southern District of New York held that conjoint analysis cannot determine market value. *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 235–36 (S.D.N.Y. 2019). Returning to Economics 101, the court noted that "market value is determined by the interaction of *both* supply *and* demand." *Id.* at 234. So, "[e]vidence that fails to account for both phenomena is not evidence of market value." *Id.* at 233. Since conjoint analysis only focuses on "the demand side of the equation" and not on supply, it alone could not determine market value. *Id.* at 235. "[W]here the law awards damages based on the difference in market value, evidence — including conjoint analyses — that measures only consumers' subjective valuation or willingness to pay is not sufficient evidence of such damages." *Id.* at 237.

Unless experts also apply some kind of supply-side analysis, conjoint analysis on its own cannot determine market price in false advertising litigation. And without a way to determine market price, plaintiffs fail to present a classwide damages model.

### B. Plaintiffs' conjoint analysis fails to account for supply-side factors and so does not suffice for a reliable classwide damages model.

Not accounting for supply-side or other real-world market factors, Dr. Moshe E. Ben-Akiva's conjoint analysis is incapable of calculating Fireball Malt's market value.

Dr. Ben-Akiva insists that he "considered supply side factors when developing [his conjoint analysis] model." Ben-Akiva Decl. at 23 ¶ 54. Yet he explains that his market "simulation is based on an *assumption* that the seller under the 'but-for' scenario would not alter the product supply." *Id.* (emphasis added); *id.* at 22 ¶ 51 ("[t]he supply situation is *assumed* to remain unchanged") (emphasis added). In other words, he assumes that Sazerac, in a scenario where the product is no longer allegedly mislabeled, will suffer the resulting lower price to ensure the same volume of sales. But he provides no reason in support of his assumption.

In fact, the record evidence demonstrates the opposite. Sazerac's CEO explained that, regardless of a change in demand, Sazerac would not lower the price of Fireball Malt. Brown Decl. at 3 ¶ 9, ECF No. 64-8 (Aug. 19, 2024). This is because Sazerac has one uniform price for all of its products of a certain size—it charges the same amount for a 50-ml bottle of Fireball Malt and Fireball Whisky. *Id.* at 3 ¶ 10. In part, Sazerac maintains this system to ensure good relationships with its distributors—a very real market concern for Sazerac. *Id.* So, the evidence actually shows that Sazerac would rather have a lower volume of sales than lower its price; the *opposite* of Dr. Ben-Akiva's assumption.

Yet the district court held that Dr. Ben-Akiva's assumption was sufficient. It approved calculating supply "based on historical sales transactions," Opinion at 26,

reasoning that the "analysis includes pricing and sales information from the actual marketplace because it measures consumers' valuations of real goods (e.g., the Fireball Malt and Whisky)," *id.* at 27. That doesn't make sense. In considering a "but-for" world, a model has to account for how *all* market actors would behave, not simply rest on unsupported assumptions on how some would act. *See, e.g.*, *Tyson Foods*, 577 U.S. at 459 (FLSA damages models cannot be based on "implausible assumptions"). Sazerac's uncontested evidence shows that, in Plaintiffs' counterfactual world, Fireball Malt would have the same price.

The district court stated that these issues go to weight, not admissibility. Opinion at 27. In doing so, the district court failed to perform the type of "rigorous" analysis that *Comcast*, 569 U.S. at 35, demands. Before certifying a class, "district court[s must] consider[] factors that may undercut [a proposed damages] model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives) and resolves disputes raised by the parties." *Olean Wholesale Grocery Coop.*, 31 F.4th at 683; *see also id.* at 678 (juries only consider the persuasiveness of damages models if "the evidence is admissible and, after rigorous review, determined to be capable of establishing [damages] on a class-wide basis"). Here, the flaws in Dr. Ben-Akiva's model are more than "[t]he speculative possibility that [he] might slip up in executing his model." *Lytle*, 114 F.4th at 1033.

Conjoint analysis models alone are incapable of determining market price and thus cannot support a false advertising plaintiff's price premium theory of damages.

Because Plaintiffs' model "does not even attempt" to "measure only those damages attributable [to their theory of liability]," the model "cannot possibly establish that damages are susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 35.

## II. The district court's opinion exemplifies the flaws in deferring a full Rule 702 analysis until after class certification.

While the district court erred under existing precedent, the fact that there is any question of the sufficiency of Dr. Ben-Akiva's model exemplifies the deep flaws in this Circuit's approach to Federal Rule of Evidence 702 and class certification. As other Circuits have found, the Federal Rules—as interpreted by the Supreme Court—require courts to conduct a full Rule 702 analysis at class certification. In any event, this Court's experiment in deferring these inquiries has failed in practice.

Rule 702 governs the admissibility of expert witnesses, like Dr. Ben-Akiva. The Rule requires that the proponent of expert testimony "demonstrate[] to the court" that the proffered testimony "is based on sufficient facts or data," is "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). In short, Rule 702 expressly recognizes judges' "responsibility of acting as gatekeepers

to exclude unreliable expert testimony." Fed. R. Evid. 702, 2000 Amendments, committee notes. The 2023 Amendments to the Rule "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, 2023 Amendments, committee notes.

### A. Deferring Rule 702 inquiries until after class certification violates Supreme Court precedent and the Federal Rules.

By declining to subject experts to the full rigors of Rule 702 at class certification, *Lytle*, 114 F.4th at 1030, this Court remains "on the short side of a lopsided circuit split," *Sali v. Corona Reg'l Med. Ctr.*, 907 F.3d 1185, 1189 (9th Cir. 2018) (Bea, J., dissenting from denial of en banc review). The Third, Fifth, Sixth, Seventh, and Eleventh Circuits have held that expert evidence must be fully admissible under Rule 702 to be considered at class certification. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187–88 (3d Cir. 2015); *Prantil v. Arkema Inc.*, 986 F.3d 570, 575–76 (5th Cir. 2021); *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 253–54 (6th Cir. 2024); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817–19 (7th Cir. 2010); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011) (unpublished); *see also Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258–59 (11th Cir. 2014). They are in the right.

Not only is the Ninth Circuit's position at odds with that of its sister circuits, it is irreconcilable with the Federal Rules of Evidence and Supreme Court precedent.

Rule 1101 specifies that the Federal Rules of Evidence apply in "civil cases and proceedings" in United States district courts. Fed. R. Evid. 1101(a), (b). Class certification under Civil Rule 23 is indisputably a "proceeding" in a "civil case" in a federal district court. As the Supreme Court clarified, the "permissibility [of evidence] turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable." *Tyson Foods*, 577 U.S. at 455 (citing Fed. R. Evid. 401, 403, and 702). The Federal Rules of Evidence—including Rule 702—thus fully apply at class certification unless there is an exception. And no such exception exists. *See, e.g.*, Fed. R. Evid. 1101(d)(1) (the only civil-case exception is for "the court's determination . . . on a preliminary question of fact governing admissibility").

Fully applying Rule 702 to class-certification proceedings reflects the evidentiary burden putative class plaintiffs must carry under Rule 23. Plaintiffs "must be prepared to prove that . . . *in fact*" the Rule 23 standards are met. *Wal-Mart Stores*, 564 U.S. at 350. "Actual, not presumed, conformance with Rule 23(a) remains indispensable." *Id.* at 351 (marks omitted). That is, plaintiffs must produce "evidentiary proof"—including of their damages model—to satisfy Rule 23.

*Comcast*, 569 U.S. at 33, 35. And this Court requires plaintiffs to "prove" those facts "by a preponderance of the evidence" before class certification. *Olean Wholesale Grocery Coop.*, 31 F.4th at 665. Such proof must be admissible under the plain text of the federal rules, requiring Rule 702's application.

### B. In practice, deferring Rule 702 inquiries has wasted judicial and party resources.

Practice has demonstrated that this Court's certify-now-ask-questions-later approach does not work.

While in theory a district court may reconsider its class-certification decision (as it may revisit most interlocutory orders) when it conducts a later Rule 702 analysis, as a practical matter this rarely occurs. "In all but exceptional cases," courts have long recognized, "an order certifying a class will be the trial court's final word on the matter." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 908 (3d Cir. 2022) (Porter, J., concurring); *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) ("[A]n order certifying a class usually is the district judge's last word on the subject."). This is because the multiplying effect of certification creates a risk of "devastating loss" that in turn leads to "in terrorem" class settlements even for "questionable claims." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); *see also* Fed. R. Civ. P. 23(f), 1998 Amendment, committee notes ("An order granting certification . . . may force a defendant to settle rather than incur the costs

of defending a class action and run the risk of potentially ruinous liability."). In practice, class certification often "sounds the death knell of the litigation." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957 (9th Cir. 2005).

Even when a district court does seriously consider or grant a decertification motion, it only underscores the extreme inefficiency and burden on parties and the courts that deferral of Rule 702 analysis imposes. For instance, the Northern District of California recently granted a defendant's Rule 702 motion and, "as a result," decertified that class. *In re Apple iPhone Antitrust Litig.*, 2025 WL 3124160, at *1 (N.D. Cal. Oct. 27, 2025) (rejecting an expert's "error-ridden" analysis), *perm. app. granted*, No. 25-7930 (9th Cir. Dec. 18, 2025). But in the intervening *nearly two years* between certification and decertification, the defendant and the court bore the significant burdens of (erroneous) certification. The parties engaged in discovery and extensive discovery disputes, requiring frequent court intervention. *See, e.g.*, *In re Apple iPhone Antitrust Litig.*, ECF Nos. 833, 834, 837, 859, 919, 949, No. 4:11-cv-6714 (N.D. Cal.). The district court held at least nine hearings, largely concerning discovery matters. *Id.* at ECF Nos. 796, 822, 835, 887, 896, 911, 966, 979, 1057. In all, the district court's docket reveals nearly 300 docket entries between certification, *id.* at ECF No. 789, and decertification, *id.* at ECF No. 1069.

*In re Apple* is not alone. *See, e.g.*, *Wallace v. Countrywide Home Loans Inc.*, 2013

WL 12642019, at *1, *5 (C.D. Cal. Feb. 12, 2013) (decertifying a damages class after granting a Rule 702 motion); *see also Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *14 (N.D. Cal. Dec. 15, 2014) (decertifying a class and denying defendant's Rule 702 motion as moot after finding plaintiff's expert's methodology flawed). These supposed success stories, too, involved months or years of wasted judicial and party effort. In *Wallace*, the district court approved class notice, ECF No. 63, No. 8:08-cv-01463 (C.D. Cal.), considered discovery disputes, *see, e.g.*, *id.* at ECF No. 107, and ruled on several partial summary judgment motions, *id.* at ECF Nos. 145, 192, 332, in the *four years* between certification and partial decertification. The *Werdebaugh* court likewise ruled on discovery disputes, ECF Nos. 140, 144, No. 5:12-cv-02724 (N.D. Cal.), and the parties fully briefed summary judgment between certification and decertification, *id.* at ECF Nos. 166, 187, 196.

This system isn't working—for either the parties or the courts. Applying Rule 702 in full at class certification would avoid significant needless effort by courts and parties. This Court should reconsider its precedent on Rule 702.

## CONCLUSION

For these reasons and those in Sazerac's brief, the Court should reverse the order granting class certification.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald
Morgan V. Maloney
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
mfitzgerald@mcguirewoods.com
mmaloney@mcguirewoods.com

*Counsel for Amici Curiae*

Erica Klenicki
Caroline McAuliffe
National Association of Manufacturers
733 10th Street, N.W.
Suite 700
Washington, D.C. 20001

*Counsel for the National Association of Manufacturers*

Jonathan D. Urick
Audrey Dos Santos
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for the Chamber of Commerce of the United States of America*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,626 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in Equity A font using Microsoft Word, in 14-point size.

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate ACMS system. All participants in the case are registered ACMS users and will be served by the system.

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald